The town of BETHANY *against* The town of OXFORD.

Where a portion of the territory of one town, is, by an act of the legislature, annexed to another, a person having a settlement in the former town, at the time of such annexation, by virtue of a residence of more than six years on the territory annexed, has his settlement transferred, with the territory, to the latter town, though he may have previously resided in a different part of the former town, a sufficient length of time to gain a settlement therein.

Where a man, having a family, had resided, with them, more than six years, on the territory annexed, and had thereby acquired a settlement thereon, but, a few months before the time of annexation, his wife being dead, and his family broken up, he went to reside at the alms-house, in another portion of the town, and was there supported by the town, at the time of annexation ; it was held, that this change of his local habitation, did not prevent a transfer of his settlement, with the territory, from the one town to the other.

THE judgment of the county court in this cause, having been reversed, on a writ of error, pursuant to the advice of

this court, *ante* 253., the cause was entered in the superior court, and was tried at *New-Haven, January* term, 1843, before *Waite,* J.

The only question was, as to the settlement of *Zebulon Lines,* the husband of *Marietta Lines,* the pauper for whose support the action was brought. By a resolve of the General Assembly, passed in *May,* 1839, a part of the territory of *Oxford* was annexed to *Bethany. Resolves of* 1839, *p.* 75, 6. At that time, *Zebulon Lines* was a pauper of the town of *Oxford,* residing in their alms-house, within the present limits of that town; and in *December,* 1839, he was married to *Marietta,* for whom the supplies were subsequently furnished.

The plaintiffs claimed, that the settlement of *Zebulon Lines* was in the present town of *Oxford;* and in support of their claim, they introduced evidence to prove, that he was born in the town of *Woodbridge,* and in the year 1798, removed to *Oxford,* and continued to reside within the present limits of that town, until the year 1816, and by virtue of such residence, acquired a legal settlement therein.

This residence was not denied by the defendants; but they claimed, that his settlement was in the present town of *Bethany,* in consequence of a subsequent residence, for a period of more than six years, in that part of *Oxford,* which was, by said resolve, annexed to *Bethany;* and they offered evidence to prove the last-mentioned residence. To the admission of such evidence the plaintiffs objected, on the ground that the settlement originally acquired by *Lines* in *Oxford,* could not be changed, or his relation in any way affected, by a six years' residence in another part of the same town; and that the question, whether he was transferred, by said resolve, to the town of *Bethany,* depended entirely on the fact, whether being an inhabitant of the town of *Oxford,* he was, at the time of passing said resolve, *residing* on the territory annexed to *Bethany.* The court overruled the objection, and admitted the evidence.

It was thereupon proved, that *Lines* removed from the town of *Woodbridge,* in the *Spring* of 1820, to a place called *Nyumphs,* part of the territory annexed in 1839 to the town of *Bethany,* and there continued to reside, with his family, until the *Spring* of 1829, a period of more than six years,

HAYWARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Bethany
*v.*
Oxford.

and then removed to *Derby;* that from that time, he resided at different places, without gaining any new settlement, until the *Spring* of 1837, when he removed back to *Nyumphs,* and there remained, until the *Autumn* of that year, when, his wife having previously died, and his children left him, he broke up house-keeping, and disposed of his furniture, and went to live with his son-in-law, *Letsom Lounsbury,* in *Nyumphs;* that he continued to live there, and at other places, as he could find employment and accommodations, until the *Autumn* of 1838, when application was made to the select-men of *Oxford,* by some of the neighbours, that he might be taken care of as a pauper; that in consequence of such application, one of the select-men, in *December,* 1838, went to *Lines,* at *Lounsbury's* house, and requested him to go to the alms-house; that *Lines* declined going then, but promised to go, when the weather became warmer; that he remained with *Lounsbury* until the month of *April,* 1839, when, being told by his son-in-law, that he could not support him any longer, he, some time between the 5th and 10th of that month, went to the alms-house, within the present limits of the town of *Oxford,* and there continued to reside until after the passage of said resolve, supported, by the town of *Oxford,* as a pauper.

The question between the parties, was, whether upon these facts, the settlement of *Lines* was in the town of *Oxford,* or in the town of *Bethany.* The plaintiffs claimed, that the court ought to instruct the jury, that if, at the time of the passage of said resolve, *Lines* was residing in the town of *Oxford,* but not on the territory annexed to *Bethany,* his settlement continued in the town of *Oxford,* notwithstanding his previous residence at *Nyumphs,* for a period of more than six years: and further, that if, at the time when *Lines* voluntarily went to the alms-house in *Oxford,* he had no home or place of residence in *Nyumphs,* and no family living there, he is to be deemed to have been residing in the town of *Oxford,* within the present limits thereof, where he actually was, at the time of the annexation.

The court did not so instruct the jury, but stated to them, that, upon the facts proved and admitted, the settlement of *Lines* was in *Bethany.*

The jury thereupon returned a verdict for the defendants; and the plaintiffs moved for a new trial.

*Baldwin*, in support of the motion, contended, 1. That *Lines* having acquired a settlement in *Oxford*, by a residence from 1798 to 1816, within the present limits of that town, which settlement has never been lost, it was not competent for the defendants to prove a subsequent residence in a different part of the same town, for the purpose of varying his place of settlement. A settlement once acquired, continues until it is lost, by the acquisition of another, in some other town. A subsequent residence, however long, in another part of the same town, can have no effect on a settlement already acquired. *Princeton* v. *West Boylston*, 15 *Mass. R.* 257.

2. That by the resolve of 1839, all the *settled inhabitants* of *Oxford*, then *residing* on the territory annexed to *Bethany*, and no others, were transferred to *Bethany*. *Resolves* of 1839, *p.* 75. *s.* 1. By the term "*residing*," as here used, is meant, *having their domicil;* and this is irrespective of the *length of time* they had resided on the territory, and irrespective also of any *temporary absence* from such domicil. *Lines* had no domicil or home at *Nyumphs*. His son-in-law, who had sheltered him for the *Winter*, refused to keep him any longer. He voluntarily went to the alms-house in *Oxford*, without any intention of returning to *Nyumphs*. His residence, and his only residence, was in the place where he was then living.

*R. I. Ingersoll* and *Blackman*, contra, contended, 1. That the last domicil of *Lines* being upon the territory transferred to *Bethany*, where he had resided for more than six years, and he never having acquired a new settlement elsewhere, the legislative resolve of 1839 transferred him, with the other inhabitants of the territory, to the town of *Bethany*. *Vernon* v. *East-Hartford*, 3 *Conn. R.* 475. *Simsbury* v. *Hartford*, 14 *Conn. R.* 192. *Oxford* v. *Bethany*, 15 *Conn. R.* 252.

2. That the fact of *Lines'* being in the *Oxford* alms-house, at the time of the annexation, made no difference. This point also was decided in *Oxford* v. *Bethany*, 15 *Conn. R.* 252. Paupers in an alms-house, gain no habitancy, by being

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

*Bethany*
*v.*
*Oxford.*

there. The very act of placing them there, at the expense of the town which sent them, would continue their relation to the place of their former residence. *Southbridge* v. *Charlton,* 15 *Mass. R.* 252.

3. That it is immaterial whether *Lines* left a family at *Nyumphs,* or not, at the time he went to the alms-house ; for having been once attached to the territory, as a legal inhabitant, nothing could detach him from it, but a settlement gained elsewhere.

WAITE, J.   When this case was before us, at the last term, we held, that if *Zebulon Lines,* at the time of the annexation of a part of the town of *Oxford* to *Bethany,* had his settlement in the part so annexed, his settlement would continue in it, and be transferred with it to *Bethany.*   15 *Conn. R.* 252.

1. It is now claimed, that inasmuch as he had acquired a settlement by residence, in that part of the old town which is now *Oxford,* that settlement would remain there, unaffected by any subsequent residence in the same town.   This proposition would, undoubtedly, be true, had there been no division of the town.   In a controversy between *Oxford* and another town, it would be immaterial in what parts of the town the pauper had resided, provided it had been such as to give him a settlement in that town.   But by the construction which has been given to our laws relating to the settlement of paupers, when a town has been divided, each part becomes liable to support such paupers as may have gained a settlement in that part, provided the legislature, on the division, has not prescribed a different rule.   Hence, so long as *Oxford* continued as it formerly was, the enquiry as to the part of the town where *Lines* had resided, for the purpose of determining his settlement, was immaterial.   But, upon the division, the question becomes material.   *Bethany* must take all the paupers who have their settlement in the part annexed to that town.

The question as to the settlement of paupers must be determined as if the two towns had always been as they now are, except so far as the legislature may have otherwise provided.   Now, if the residence of *Lines* in the two parts, had been subsequent to the division, the change of residence

New-Haven,
July, 1843.

Bethany
v.
Oxford.

would clearly be material. His settlement in *Oxford* would be lost, upon gaining another in *Bethany*. So, in like manner, his removal from the part which still continues *Oxford*, into that part now constituting a part of *Bethany*, becomes a proper subject of enquiry. The testimony, therefore, was clearly admissible.

2. It is further insisted, that by the resolve of the General Assembly, all the inhabitants residing upon the territory annexed to *Bethany*, became inhabitants of that town ; and consequently, it became necessary to ascertain the domicil of *Lines*, at the time of the annexation, for the purpose of determining his settlement.

It is very obvious, that a person may be an inhabitant of one town, and have his settlement in another. He may have his domicil in one town ; have a right to vote there; to sue and be sued as an inhabitant of that town; and yet, when he becomes poor, another town may be liable for his support.

The language of the resolve must be understood according to the manifest intent of the legislature. That was, to transfer to *Bethany* a part of the old town of *Oxford*, with all the inhabitants residing thereon ; and not to change or affect the settlement of those inhabitants, except so far as it might be affected by the division of the town, as has already been stated ; that is, those who had their settlement on the part annexed to *Bethany*, would thereafter have their settlement in *Bethany* instead of *Oxford*.

We, therefore, do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.