THE TOWN OF HADDAM *vs.* THE TOWN OF EAST LYME.

Hartford District, Jan. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

Upon the creation of a new town out of the territory of an existing one, where the legislature does not otherwise provide, any settled inhabitants of the original town who become paupers, are to be considered as belonging to the new town if they had their residence as such inhabitants upon the territory embraced within it.

The town of *E* was incorporated from territory taken from the towns of *W*

and *L.* The resolution provided that "all the inhabitants now or at any time residing within said limits, excepting the paupers of *W* now in its poor-house, shall be a separate corporation." Held that the provision with regard to a portion of the paupers, and the omission to provide for any others, and the comprehensive language used, did not take the case out of the application of the general rule.

One of three selectmen of a town submitted the question of the settlement of a pauper to arbitration. Of the other selectmen one had agreed that this one "should attend to the case," and the other had not been consulted. Held that the town was not bound by the award.

[Argued January 5th—decided March 1st, 1886.]

ACTION to recover for supplies furnished to a pauper claimed to belong to the defendant town; brought to the Superior Court in Middlesex County. Facts found by a committee and case reserved for advice. The case is sufficiently stated in the opinion.

*S. A. Robinson,* for the plaintiffs.

*S. Lucas* and *C. W. Butler,* for the defendants.

PARDEE, J. In 1839 the town of East Lyme was incorporated, including territory taken from Waterford and Lyme. The father of the pauper was born within the limits of the present town of Waterford and there lived until the year 1837, when he removed to that part of the same town which was made part of the town of East Lyme; there the pauper was born in 1838; and there he lived with his father until after the incorporation of East Lyme. Neither of them gained a legal settlement in the part of Waterford which was made a part of East Lyme, nor subsequently in any other town. The pauper came to want in and was aided by East Haddam in 1882. This suit is for money thus expended. The plaintiff had judgment, and the defendant appealed.

In *Bethany* v. *Oxford,* 15 Conn., 550, it is said as follows: —" But, by the construction which has been given to our laws relating to the settlement of paupers, when a town has been divided each part becomes liable to support such pau-

pers as have gained a settlement in that part, provided the legislature on the division has not prescribed a different rule."

· In *Waterbury* v. *Bethany*, 18 Conn., 424, it is said as follows:—" It is a well established principle of the common law of this state, as expressed by WAITE, J., in the opinion of the court in *Bethany* v. *Oxford*, 15 Conn. R., 550, that when a town has been divided, each part becomes liable to support such paupers as may have gained a settlement in that part, provided the legislature on the division has not prescribed a different rule ; and that the question as to the settlement of paupers must be determined as if the two towns had always been as they now are, except so far as the legislature may have otherwise provided. * * * In the next place, by the principle of our common law which has been mentioned in regard to the settlement of paupers, on the division of the town of Woodbridge the paupers of that town would be deemed to have a settlement in that part where they would have had one if the two new towns had always been distinct, and the new town constituted of that part would be liable for their support."

Upon these authorities, assuming that the towns of Waterford and East Lyme were incorporated at the same time, with their present respective boundaries, the pauper through his father had a legal settlement in Waterford, which he retains to this present, having never gained another in East Lyme or elsewhere. ·

Presumptively the parties knew the common law rule and were unwilling to permit it to operate in its integrity. Presumptively too they asked and obtained legislative restriction upon it in some particulars. The legislature divided present paupers. It also provided that all persons who should thereafter come to want in any town except Waterford and Lyme, who had not elsewhere gained a legal settlement, should be chargeable to East Lyme, provided they had formerly resided on the territory assigned to it, and had removed therefrom prior to its incorporation. The pauper in question was not a pauper at the passage of the resolu-

tion; he then and for a time thereafter resided upon the territory included in East Lyme. We must assume that the legislature in omitting to touch his case intentionally left him under the control of the common law.

The resolution incorporating East Lyme specifies the territory, and says that it "shall be, and the same is hereby made and constituted, a separate and distinct town by the name of East Lyme, and all the inhabitants now or at any time residing within said limits, excepting the Waterford town paupers now in the pauper house of said town of Waterford, shall be and remain a separate and distinct corporation." It is the claim of the plaintiff that "this clause shows clearly that the then inhabitants of the new territory (having a settlement in the ancient town of course) except such residents as were then in the pauper house of Waterford, were intended by the operation of the whole act to be settled inhabitants of the new town." But in *Bethany* v. *Oxford*, (*supra*), the resolve incorporating Bethany, after disposing of present paupers, said:— "And in all other respects the said territory and the inhabitants thereof shall constitute a part of said Bethany, with all its privileges and liabilities." Of this the court said:—" The language of the resolve must be understood according to the manifest intent of the legislature. That was to transfer to Bethany a part of the old town of Oxford, with all the inhabitants residing thereon; not to change or affect the settlement of those inhabitants, except so far as it might be affected by the division of the towns as has already been stated; that is, those who had their settlement on the part annexed to Bethany would thereafter have their settlement in Bethany instead of Oxford." We think the same meaning is to be imputed to the resolve incorporating East Lyme.

The plaintiff began to assist the paupers in 1882, and notified the defendant and the town of Waterford that it should claim repayment from each. Smith was a selectman of the plaintiff town, Comstock of the defendant town, and Beckwith of Waterford. Upon invitation of the latter the others met him for the purpose of adjusting the claim. Af-

ter conversation Beckwith said in Comstock's presence to Smith, "You go home Comstock and I will settle to which of our towns the pauper belongs." Beckwith and Comstock agreed to, and did, submit that question to an arbitrator, who decided that he belonged to East Lyme. Comstock was one of three selectmen of East Lyme; one other had agreed that Comstock should "attend to this pauper case;" the third was not consulted. East Lyme refused to be bound by the decision. It is the claim of the plaintiff that the defendant is bound by the award and that its liability is *res adjudicata.* We cannot assent to this. The town in its corporate capacity had given no power to Comstock to submit the claim; the board of selectmen, three in number, gave him no such power; one of them neither said nor knew anything about the matter; the third consented to nothing more than that Comstock should "attend to this pauper case." To these words no greater force or broader meaning is to be given than to interpret them as imposing upon Comstock the duty of gathering information and making other preparation necessary to the protection of the town against such claim as the plaintiff should attempt to enforce by legal proceedings. If he became persuaded that the interests of his town could be more safely entrusted to arbitration than to the judgment of a court, it was his duty to get the necessary authority to submit it, from the board of selectmen at least.

The Superior Court is advised to render judgment for the defendant.

In this opinion the other judges concurred.